Civil Investigative Demand-No. 25-080_____

# United States Attorney's Office
**Eastern District of Michigan**

TO:    JEFFREY H. MARGOLIS, M.D.
       5171 Middlebelt Road
       West Bloomfield, Michigan 48323

This Civil Investigative Demand ("Demand") is issued pursuant to the False Claims Act, 31 U.S.C. §§ 3729-3733 (the "FCA"), in the course of an FCA investigation to determine whether there is or has been a violation of 31 U.S.C. § 3729. The False Claims Act investigation concerns allegations that Biotech Clinical Laboratories, Inc. ("Biotech") and its principals, including Jeffrey Margolis, submitted or caused the submission of false claims to the Medicare, Medicaid and/or any other federally subsidized healthcare program, by submitting claims for payment that did not comply with the requirements of these programs or by submitting false statements material to a false claim. Additionally, the investigation concerns allegations that Biotech and its principals, including Jeffrey Margolis, violated the Anti-Kickback Statute, 42 U.S.C. § 1320a-7b(b)(the "Anti-Kickback Statute"), the Stark Law, 42 U.S.C. § 1395nn (the "Stark Law"), and the FCA, by offering, providing and/or receiving remuneration in exchange for referrals.

This Demand requires you to provide to the Federal Government documents and testimony. This is the original of the Demand; no copies have been served on other parties. The information and documents provided in response to this Demand may be shared, used, and disclosed as provided by 31 U.S.C. § 3733.

## Document Requests

You are required by this Demand to produce any and all of the Documents in your possession, custody or control specified in the document requests set forth below. You must make this material available to Assistant United States Attorney Leslie Wizner, who is designated as the False Claims Act custodian in this case. Ms. Wizner may be contacted at (313) 226-9766 or (313) 269-4760, or at the email address Leslie.Wizner@usdoj.gov, if you have any questions. **These documents shall be produced no later than thirty (30) days from the receipt of this Demand, at the U.S. Attorney's Office for the Eastern District of Michigan, 211 W. Fort Street, Ste. 2001, Detroit, Michigan 48226,** or at another location to be mutually agreed upon by yourself and the False Claims Act custodian. The production of documentary material in response to this Demand must be made under a sworn certificate in the form printed in this Demand.

**Oral Testimony**

You are required by this Demand to give oral testimony under oath, commencing June 13, 2025, at 2 p.m., at the Office of the United States Attorney for the Eastern District of Michigan, 211 W. Fort Street, Ste. 2001, Detroit, Michigan 48226, or at such other time as may be agreed upon by Assistant United States Attorney Wizner and you. The testimony will be taken stenographically and also may be recorded audio-visually.

Ms. Wizner will be the False Claims Act investigator who will conduct the examination. The custodian to whom the transcript of the examination will be delivered is Ms. Wizner. Ms. Wizner may be contacted at (313) 226-9766, (313) 269-4760, or Leslie.Wizner@usdoj.gov, if you have any questions.

Your attendance and testimony at the oral examination are necessary to conduct the False Claims Act investigation described above. You have the right to be accompanied by an attorney and any other personal representative at the oral examination.

The general purpose for which this Civil Investigative Demand is issued is to discover your knowledge concerning Biotech's business practices relating to its submission of claims to government payors. The primary areas of inquiry will relate to marketing, recruitment, referrals, compensation, rental agreements, the coding, billing, and medical necessity of toxicology and other types of laboratory testing, and compliance with the Stark Law, the Anti-Kickback Statute and the False Claims Act

Issued at Detroit, MI, this 13th day of May 2025.

Leslie Matuja Wizner
Assistant United States Attorney
Eastern District of Michigan

## <u>INSTRUCTIONS AND DEFINITIONS</u>

A.      You must respond to the following document requests and respond to the following interrogatories in accordance with these instructions and considering the following definitions.

B.      Whenever appropriate, the singular form of a word shall be interpreted as plural, and the masculine gender shall be deemed to include the feminine and vice versa.

C.      This CID requires production of all information and Documents responsive to any of the requests listed below in your possession, custody, or control, regardless of where the Documents are located.

D.      If any Document otherwise responsive to this Demand is not produced because it was lost, destroyed, or discarded:

1.  identify the document by type, date, and title;
2.  identify the person who last had custody or control over the document;
3.  state the date on which the document was destroyed or was discovered to have been lost; and
4.  identify all persons who have knowledge of the contents of each lost or destroyed document, giving a concise but complete statement of the knowledge you claim each such person has.

E.      The Custodian of Records shall sign and return the attached Certificate of Compliance at the time of return of the records.  If no Documents exist that are responsive to a request, a written statement to that effect shall be provided at the time of production along with the Certificate of Compliance.

F.      Documents produced pursuant to this CID are to be organized in a manner such that all records relating to a particular request are grouped together and identified as being responsive to that request.

G.      Any production made under this CID, including production of electronic information, shall be in a readable form and pursuant to the Specifications for Production of ESI and Digitized ("Scanned") Images, which is attached as Exhibit 1.

H.      Attachments to responsive records shall be produced attached to the responsive records.

I.      This CID is ongoing in nature, and you should supplement your responses with copies of any other responsive records as those records come into your possession, custody, or control, or as soon thereafter as practicable.

J.      To the extent you have knowledge that Biotech has already produced responsive documents in connection with its response to CID No. 24-061, please contact the False Claims Act custodian identified above to avoid producing any duplicative documents.

K.      Claim of Privilege: Where a claim of privilege is asserted regarding any record requested by this CID, and such record, or any part thereof, is not produced on the basis of such claim, for each record or part thereof that is not produced, please provide a privilege log where you include the following information with sufficient particularity, so as to allow for the assessment of the validity of the claim of privilege:

1. the specific Request of this CID to which the record is responsive;
2. the Bates numbers identifying the records;
3. the type of record being withheld (e.g., letter, memorandum, handwritten notes, marginalia, etc.);
4. a description of its contents;
5. the author(s);
6. actual and intended recipients of the record;
7. the date;
8. the specific privilege being asserted; and
9. identification of legal counsel associated with the claimed privilege.

L.      "And" as well as "or" shall be construed both conjunctively and disjunctively, as necessary, in order to bring within the scope of any specification in this subpoena all Documents that otherwise might be construed to be outside its scope.

M.      All present tenses of verbs or verb forms shall be considered to include within their meaning the future and past tenses as well, and vice versa.

N.      The underlined section headings are for organizational purposes only and should not be considered as limiting in any way the specifications under the provisions of the CID.

O.      "You" or "your" means Jeffrey H. Margolis, M.D.

P.      "Biotech" means and refers to Biotech Clinical Laboratories, Inc. and any assumed names, trade names, predecessors, successors, affiliates, subsidiaries, shareholders, partners, members, Biotech Principals, employees, directors, officers, alter egos, agents, offices, or related organizations.

Q.      "Biotech Principal" means any Officer, member of the Board of Directors, member, partner or any individual who currently holds or held any ownership interest in Biotech or its parent organization during the Relevant Time Period, including you.

R.      "Marketer" means any person or entity that received any remuneration from You, for any services provided relating to marketing, client account management, practitioner relationships, referrals of Referrers, obtaining leases or subleases of space, provision of Collectors, sales, ordering of tests, or similar services, including through any assumed

names, trade names, predecessors, successors, affiliates, subsidiaries, shareholders, partners, employees, directors, officers, alter egos, agents, offices, or related organizations.  "Marketer" includes Biotech contractors or employees.

S.    "Referrer" means any health care provider, including a Physician, group of physicians, practice, organization, practitioner, or group of practitioners, however organized, who order patient laboratory tests that are provided by, or arranged for, Biotech.

T.    "Collector" means a laboratory specimen collector located at a site outside of the laboratory who collects samples that will be transferred to the laboratory for analysis. "Collector" may include a phlebotomist for blood samples and any other individual, whether an independent contractor or employee, who manages the collection of urine specimens.

U.    "UDT" means toxicology urine drug tests including, but not limited to, those typically coded with any of the following CPT/HCPCS Codes: 80305-80307, G0480-G0483 81000-81003, and their predecessor and successor codes.

V.    "Relevant Time Period" means January 1, 2018 to the present, except for Document Request Nos. 3.1 through 3.4, for which the Relevant Time Period means January 1, 2015 to the present.  If a Document was created prior to the Relevant Time Period, but was effective at any time during the Relevant Time Period, it is considered as within the Relevant Time Period for purposes of this CID.

W.    "Communication" is used in the broadest sense permitted by Federal Rules of Civil Procedure 26(b), 34(a) and 45(a) and means any transmission or exchange of information orally or in writing including, but not limited to, text messaging.

X.    "Document" and "Documents" are used in the broadest sense permitted by Federal Rules of Civil Procedure 26(b), 34(a) and 45(a) and include, but are not limited to, any hard copy or electronically stored information and emails.  The term "Documents" includes Communications.

Y.    "Physician" means not only a single physician or other practitioner lawfully permitted to order laboratory tests, but any group of physicians, however organized, including, but not limited to, a P.C., PLLC, or joint venture.

Z.    "Relate to" or "relating to" means to be relevant in any way to the subject matter in question, including, but not limited to, all information that directly contains, records, reflects, summarizes, evaluates, refers to, indicates, comments upon, or discusses the subject matter.  The terms also include records or information that state the background of, was the basis for, records, evaluates, comments upon, or was referred to, relied upon, utilized, generated, transmitted, or received, in arriving at any conclusion, opinion, estimate, position, decision, belief, or assertion concerning the subject matter.

AA.    "Remuneration" means and refers to compensation of any kind or form including, but not

5

limited to, cash, checks, loans, gifts, discounts, leases, subleases, services, kickbacks, bribes, rebates, entertainment, or meals.

BB.   "Federally Subsidized Health Insurance Plan" includes the Medicare, Medicaid and Tricare programs.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

For the Relevant Time Period, produce:

### Corporate Records

1.1   [intentionally left blank]

1.2   All minutes or notes from meetings of Biotech's board of directors, partners, members, governing body or management, and Communications to or from Biotech Principals relating to:

    a.   Marketing or Marketers;
    b.   Recruitment of Physicians or Referrers;
    c.   Recruitment of additional directors, partners, members, or others to share in ownership or control of Biotech;
    d.   Distributions or payments to directors, partners, members, or members of the governing body;
    e.   Executive compensation;
    f.   Payments to Physicians or Referrers;
    g.   Rental of space agreements including Leases and Subleases;
    h.   Collectors;
    i.   Referrals of patients or business;
    j.   UDT;
    k.   Medicare or Medicaid billing or payment issues, including but not limited to diagnostic coding of laboratory tests for Medicare or Medicaid and billing of laboratory tests under Medicare or Medicaid;
    l.   Requisition forms;
    m.   The medical necessity of any laboratory tests; or
    n.   The Stark Law, the Anti-Kickback Statute or the False Claims Act.

### Financial and Other Documents

2.1   Documents reflecting payments to or from a Federally Subsidized Health Insurance Plan, which break down the claims paid or denied by category or group, including but not limited to, by Referrer, entity referring, and payments by diagnosis or billing codes.

2.2     All IRS Form 1099 or W-2s for Marketers, Referrers, and Collectors.

2.3     All records of disbursements made to Biotech Principals including, but not limited to, IRS K-1 forms, W-2s, Form 1099, or reimbursements for business or other expenses.

2.4     All agreements including, but not limited to, contracts, offers, letter agreements, oral agreements, or any understanding, and modifications to such agreements, relating to arrangements between Biotech and other laboratories for the provision of laboratory services.

2.5     All agreements with third-party billing companies for their performance of some or all of the steps needed to submit claims for laboratory services.

2.6     All Documents relating to any compensation or other remuneration provided between Biotech and any third-party billing company.

2.7     Communications between (i) any third-party billing company and Biotech or you, or (ii) any Referrer and Biotech or you, relating to UDTs, diagnostic codes, requisition forms, panels or bundles of laboratory services, medical records, supporting documentation for claims, claim denials, or the medical necessity of any laboratory tests.

## **<u>Marketers</u>**

3.1     All agreements between Biotech or you and any Marketer including, but not limited to, contracts, offers, leases, sales agreements, letter agreements, partnership agreements, employment agreements, bonus descriptions, or any understanding, and modifications to such agreements (the "Marketer Agreements").

3.2     All Documents relating to any remuneration exchanged between Biotech or you and any Marketer, including, but not limited to, financial summaries and tracking of amounts due, payments to or from, photocopies of checks, invoices, bonus earnings, incentives, IRS Form W-2s, IRS Form 1099s, reimbursements, and expenses.

3.3     All Documents reflecting:

      a.  Referrers attributable to each Marketer;
      b.  The time period for which the Referrer was attributed to the Marketer; and
      c.  Referrer billings and collections attributable to the Marketer, regardless of the payor, and regardless of whether the Marketer received credit for the billings. These Documents include, without limitation, lists, logs, memos, and tracking documents.

3.4     All Documents relating to the fair market value or commercial reasonableness of the Marketer Agreements, or relating to any Stark Law exception or Anti-Kickback safe harbor applicable to the Marketer Agreements.

**Collector Arrangements**

4.1    All agreements including, but not limited to, contracts, offers, leases, subleases, sales agreements, letter agreements, partnership agreements, or any understanding, and modifications to such agreements, relating to Biotech's use of Collectors, its contract with or employment of a Collector, or an arrangement to locate a Collector in, or in close proximity to, the office of a Referrer (the "Collector Agreement(s)").

4.2    All Documents relating to the negotiation and/or performance of the Collector Agreements, including, but not limited to, amounts owed, work performed, and floor plans of space, regardless of whether the communications resulted in the execution of a Collector Agreement.

4.3    All Documents reflecting amounts due, or payments to or from, any party to a Collector Agreement, including, but not limited to, photocopies of checks, invoices, receipts, IRS Form W-2s, and IRS Form 1099s.

4.4    All Documents relating to Collectors and coding, diagnosis codes, UDTs, training, requisition forms, medical records and third party payment(s) for lab services, including but not limited to, denials, audits, reviews, specimen collections, responsibilities, assignments, work schedules, prohibited activities or job responsibilities.

4.5    All Documents relating to the fair market value or commercial reasonableness of the Collector Agreements, or relating to any Stark Law exception or Anti-Kickback safe harbor applicable to the Collector Agreements.

**Laboratory and Collection Locations**

5.1    All leases and subleases and any other agreement relating to the location where lab or collection services are performed or where any Biotech employee or contractor is located.

5.2    Documents reflecting all payments made relating to the agreements provided in Section 5.1.

**Toxicology Testing**

6.1    All Documents relating to:

    a.  Biotech's tracking or analysis of the number or frequency of laboratory tests Biotech processed, or the profitability of specific laboratory tests Biotech performed, including but not limited to, those tracked by Referrer;
    b.  Biotech's billing, coding or ordering of laboratory tests paid by any government health care program; and
    c.  The appropriateness of the coding and billing of laboratory tests included in each individual panel, profile, or bundle for services.

8

6.2    Audit records, internal reports, consultant analyses, or other evaluations and Communications, relating to laboratory testing or billing, including, but not limited to: internal audit reports, with working papers and management responses; Medicare Targeted Probe and Educate reviews; records related to any federal or state audit, investigation, or review of Biotech's operations; any other review, audit, or analysis of services Biotech provided, Biotech's claims for payment, and Biotech's processes and methods for coding and documenting services billed to a Federally Subsidized Health Insurance Plan.

6.3    All Documents relating to the training of Biotech employees, Physicians, Referrers, Marketers, Collectors, billers or their employees, contractors, agents or representatives relating to the ordering, billing, or requisition forms for laboratory services.

6.4    All Documents relating to awards, honors, bonuses, recognition, compensation, or other remuneration to Biotech employees, Physicians, Referrers, Marketers or any of their agents or representatives, in connection with the provision or billing of laboratory services.

## Laboratory Testing

7.1    All Documents relating to the selection of diagnostic codes as applied to the billing of laboratory tests, including but not limited to policies, procedures, practices, advice or guidance.

7.2    All Documents relating to any audit, review, consultant analyses, internal report, Targeted Probe and Educate review, complaint or inquiry by any entity, or denial of claims relating to reimbursement for laboratory tests.

7.3    All Documents relating to the training of Biotech employees, Physicians, Referrers, Marketers, Collectors, billers or their employees, contractors, agents or representatives relating to the use of diagnostic codes in the ordering, billing, or requisition forms for laboratory tests.

## Patient Records and Requisition Forms

8.1    [intentionally left blank]

8.2    [intentionally left blank]

8.3    [intentionally left blank]

8.4    [intentionally left blank]

## **General**

9.1    If not otherwise produced above, all Documents relating to referrals or anticipated referrals of Referrers, patients or services.

9.2    Internal communications, instructions, directives, training materials, policies, or procedures relating to Biotech's or Your compliance with the Stark Law, the Anti-Kickback Statute, and Federally Subsidized Health Insurance Plan coding and billing requirements.

9.3    All Documents relating to any complaint, concern, inquiry, investigation, or review relating to a possible violation by You or Biotech of any federal statute or regulation, including, but not limited to, the Stark Law, the Anti-Kickback Statute, and Federally Subsidized Health Insurance Plan coding and billing requirements.

9.4    Any opinions, guidance, or advisory memorandums received from any source, including the U.S. Department of Health and Human Services, the Centers for Medicare and Medicaid Services or its contractors, relating to the Stark Law, the Anti-Kickback Statute and Federally Subsidized Health Insurance Plan coding and billing requirements.

9.5    Any complaint, criticism, objection, report, accusation, allegation, investigation, or compliance referral made by any individual or entity relating to Your or Biotech's billings, provision of remuneration to Referrers, provision of unnecessary diagnostic tests, upcoding of diagnostic tests, Marketers or Collectors.

9.6    Documents reflecting Biotech's and Your document retention policy and the implementation of that policy with respect to Documents responsive to these Requests.

9.7    Documents identifying the information systems storing Documents responsive to this CID, including the location of servers, cloud storage, and software utilized, including, but not limited to, the software versions, and contractors assisting with the maintenance of such systems.

9.8    [intentionally left blank]

**FORM OF CERTIFICATE OF COMPLIANCE**[1]

       I have responsibility for producing the Documents requested in Civil Investigative Demand No. **25-080**. I hereby certify that all the materials required by that Civil Investigative Demand which are in the possession, custody or control of the person to whom the Demand is directed have been submitted to a custodian named therein.

       If any such material has not been produced because of a lawful objection, the objection to the document request and the reasons for the objection have been stated.

Signature ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Title    ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

**SWORN TO** before me this _____ day of

_____, 2025

_____

NOTARY PUBLIC

---

[1]   In place of a sworn statement, the above certificate of compliance may be supported by an unsworn declaration as provided for by 28 U.S.C. § 1746.

**<u>VERIFIED RETURN OF SERVICE</u>**

I, Jonathan K. Sonbay, an employee of the United States Attorney's Office, working under the direction and supervision of attorney **Leslie Wizner** in connection with a false claims law investigation, hereby certify that on the 13th day of May, 2025, I served Civil Investigative Demand No. 25-080 on Jeffrey Margolis, by emailing an executed copy of such Demand to the following individuals:

David L. Rogers                                   Brian P. Lennon, Esq.
Rogers & Associates, P.C.                   Rogers & Associates, P.C.
32255 Northwestern Highway, Ste. 190   32255 Northwestern Highway, Ste. 190
Farmington Hills, Michigan 48334         Farmington Hills, Michigan 48334
drogers@healthlex.com                        blennon@healthlex.com

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 13th day of May, 2025.

_____
A.C.E. Investigator
U.S. Attorney's Office

**EXHIBIT 1**

**Specifications for Production of ESI and Digitized ("Scanned") Images
("Production Specifications")**

### 1. Collection of Electronically Stored Information (ESI)

Careful consideration should be given to the methodology, implementation and documentation of ESI collection to ensure that all responsive data and metadata are preserved in the collection process.

**a. Specification Modifications**

Any modifications or deviations from the Production Specifications may be done only with the express permission of the government and these modifications or deviations should be communicated to the government and approved by the government in written form. Any responsive data or documents that exist in locations or native forms not discussed in these Production Specifications remain responsive and, therefore, arrangements should be made with the government to facilitate their production.

**b. Production Format of ESI and Imaged Hard Copy**

Responsive ESI and imaged hard copy shall be produced in the format outlined below. All ESI, except as outlined below in sections 5 – 20, shall be rendered to TIFF image format, and accompanied by a Concordance® Image Cross Reference file. All applicable metadata (see section 3 below) shall be extracted and provided in Concordance® load file format.

  i. Image File Format:
  All images, paper documents scanned to images, or rendered ESI, shall be produced as 300 dpi single-page TIFF files, CCITT Group IV (2D Compression). Images should be uniquely and sequentially Bates numbered and unless otherwise specified, Bates numbers should be an endorsement on each image.

  - All TIFF file names shall include the unique Bates number burned into the image.
  - Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page.
  - All TIFF image files shall be stored with the ".tif" extension.
  - Images shall be OCR'd using standard COTS products.
    - An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.
    1. All pages of a document or all pages of a collection of documents that comprise a folder or other logical grouping, including a box, shall be delivered on a single piece of media.
    2. No image folder shall contain more than 2000 images.
  ii. **Concordance® Image Cross Reference file:** Images should be accompanied by a Concordance® Image Cross Reference file that associates each Bates number with its

corresponding single-page TIFF image file.  The Cross Reference file should also contain the image file path for each Bates numbered page.

    1.   Image Cross Reference Sample Format:

ABC00000001,OLS,D:\DatabaseName\Images\001\ ABC00000001.TIF,Y,,,

ABC00000002,OLS,D:\DatabaseName\Images\001\ ABC00000002.TIF,,,,

ABC00000003,OLS,D:\DatabaseName\Images\001\ ABC00000003.TIF,,,,

ABC00000004,OLS,D:\DatabaseName\Images\001\ ABC00000004.TIF,Y,,,

iii.   **Concordance® Load File**: Images should also be accompanied by a "text load file" containing delimited text that will populate fields in a searchable, flat database environment.  The file should contain the required fields listed below in section 3.

    1.   Text delimited load files are defined using the standard Concordance delimiters.  For example:

| | |
|---|---|
| *Field Separator* | ¶ *or Code 020* |
| *Text Qualifier* | þ *or Code 254* |

    2.   The text file should also contain hyperlinks to applicable native files, such as Microsoft Excel or PowerPoint files.

    3.   There should be one line for every record in a collection.

    4.   The load file must contain a field map/key listing the metadata/database fields in the order they appear within the data file.  For example, if the data file consists of a First Page of a Record (starting Bates), Last Page of a Record (ending Bates), DOCID, DOCDate, File Name, and a Title, then the structure may appear as follows:

þBEGDOCþ¶þENDDOCþ¶þDOCIDþ¶þDOCDATEþ¶þFILENAMEþ¶þTITLEþ

iv.   **The extracted/OCR** text for each document should be provided as a separate single text file. The file name should match the BEGDOC# or DOCID for that specific record and be accompanied by the .txt extension.

v.   **Directory and folder structure:**  The directory structure for productions should be:

\\*CaseName*\\**LoadFiles**

\\*CaseName*\\**Images** < For supporting images (can include subfolders as needed)

\\*CaseName*\\**Natives** <Native Files location (can include subfolders as needed)

\\*CaseName*\\**Text** <Extracted Text files location (can include subfolders as needed)

c.   **Required Metadata/Database Fields**

    1.   A "✓" denotes that the indicated field should be present in the load file produced.

    2.   "Other ESI" includes data discussed in sections 5 – 20 below, but does not include email, email repositories (section 11), "stand alone" items

(section 12), and imaged hard copy material (section 9).  Email, email repositories, and "stand alone" materials (section 12) should comply with "Email" column below.  Imaged hard copy materials should comply with the "Hard Copy" column.

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| COLLECTION SOURCE | Name of the Company/Organization data was collected from | Text | 160 | ✓ | ✓ | ✓ |
| SOURCE ID (BOX #) | Submission/volume/box number | Text | 10 | ✓ | ✓ | ✓ |
| CUSTODIAN | Custodian/Source - format: Last, First or ABC Dept. | Text | 160 | ✓ | ✓ | ✓ |
| AUTHOR | Creator of the document | Text | 500 | | | ✓ |
| BEGDOC# | Start Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| ENDDOC# | End Bates (including prefix) - No spaces | Text | 60 | ✓ | ✓ | ✓ |
| DOCID | Unique document Bates # or populate with the same value as Start Bates (DOCID = BEGDOC#) | Text | 60 | ✓ | ✓ | ✓ |
| PGCOUNT | Page Count | Number | 10 | ✓ | ✓ | ✓ |
| GROUPID | Contains the Group Identifier for the family, in order to group files with their attachments | Text | 60 | | ✓ | ✓ |
| PARENTID | Contains the Document Identifier of an attachment's parent | Text | 60 | | ✓ | ✓ |
| ATTACHIDS | Child document list; Child DOCID or Child Start Bates | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| ATTACHLIST | List of Attachment filenames | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BEGATTACH | Start Bates number of first attachment | Text | 60 | ✓ | ✓ | ✓ |
| ENDATTACH | End Bates number of last attachment | Text | 60 | ✓ | ✓ | ✓ |
| PROPERTIES | Privilege notations, Redacted, Document Withheld Based On Privilege | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| RECORD TYPE | Use the following choices: Image, Loose E-mail, E-mail, E-Doc, Attachment, Hard Copy or Other.  If using Other, please specify what type after Other | Text | 60 | ✓ | ✓ | ✓ |
| FROM | Author - format: Last name, First name. | Text | 160 | | ✓ | ✓ |
| TO | Recipient - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| CC | Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| BCC | Blind Carbon Copy Recipients - format: Last name, First name. | Text – semicolon delimited | Unlimited | | ✓ | ✓ |
| SUBJECT | Subject line/Document Title | Text | Unlimited | | ✓ | ✓ |
| CONVINDEX | E-mail system ID used to track replies, forwards, etc. | Text | Unlimited | | ✓ | |
| DOCDATE | Last Modified Date for files and Sent date for e-mail, this field inherits the date for attachments from their parent. | Date | MM/DD/YYYY | | ✓ | ✓ |
| TEXT FILEPATH | Relative file path of the text file associated with either the extracted text or the OCR | Text | Unlimited | ✓ | ✓ | ✓ |
| DATE TIME SENT | Date Sent (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME CRTD | Date Created (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME SVD | Date Saved (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| DATE TIME MOD | Date Last Modified (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| DATE TIME RCVD | Date Received (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | |
| DATE TIME ACCD | Date Accessed (USE TIME ZONE OF COLLECTION LOCALITY) | Date and Time | MM/DD/YYYY HH:MM:SS | | ✓ | ✓ |
| FILE SIZE | Native File Size in bytes | Number | 10 | | | ✓ |
| FILE NAME | File name - name of file as it appeared in its original location | Text | Unlimited | | | ✓ |
| APPLICATION | Application used to create native file (e.g. Excel, Outlook, Word) | Text | 160 | | ✓ | ✓ |
| FILE EXTENSION | Extension for the file (e.g. .doc, .pdf, .wpd) | Text | 10 | | ✓ | ✓ |
| FILEPATH | Data's original source full folder path | Text | Unlimited | | ✓ | ✓ |
| NATIVE LINK | Relative file path location to the native file | Text | Unlimited | | ✓ | ✓ |
| FOLDER ID | Complete E-mail folder path (e.g. Inbox\Active) or Hard Copy container information (e.g. folder or binder name) | Text | Unlimited | ✓ | ✓ | ✓ |
| PARAGRAPH REQUEST NUMBER | Subpoena/request paragraph number to which the document is responsive. Use semicolon to delimit multiple entries. | Text – semicolon delimited | Unlimited | ✓ | ✓ | ✓ |
| MD5 HASH | MD5 Hash value (used for deduplication or other processing) (e-mail hash values must be run with the e-mail and all of its attachments) | Text | Unlimited | | ✓ | ✓ |
| MESSAGEHEADER | E-mail header. Can contain IP address | Text | Unlimited | | ✓ | |

| Field name | Field Description | Field Type | Field Value | Hard Copy | E-mail | Other ESI |
|---|---|---|---|---|---|---|
| ATTACHMCOUNT | Number of attachments (any level child document) associated with a ParentID | Text | 10 | | ✓ | |
| FILE TYPE | Identifies the application that created the file Type of file, not to be confused with file extension | Text | 160 | | ✓ | ✓ |
| COMMENTS | Identifies whether the document has comments associated with it | Text | 10 | | ✓ | ✓ |
| MESSAGE TYPE | Exchange Message class or equivalent | Text | 60 | | ✓ | |
| EXTENDED PROPERTIES | For PDFs Only | Text | 600 | | ✓ | ✓ |

**d. Search, De-Duplication, Near-Duplicate Identification, E-mail Conversation Threading and Other Culling Procedures**

De-duplication of exact copies <u>within</u> a custodian's data may be done, but all file paths and custodians must be provided for each duplicate document in an exception report in .csv format. The recipient shall not use any other procedure to cull, filter, group, separate or de-duplicate, or near-deduplicate, etc. (i.e., reduce the volume of) responsive material before discussing with and obtaining the written approval of the government. All objective coding (e.g., near duplicate ID or e-mail thread ID) shall be discussed and produced to the government as additional metadata fields. The recipient will not employ analytic software or technology to search identify, or review potentially responsive material, including but not limited to technology assisted review (TAR) or predictive coding, without first discussing with the government.

**e. Hidden Text**

All hidden text (e.g. track changes, hidden columns, mark-ups, notes) shall be expanded and rendered in the image file. For files that cannot be expanded the native files shall be produced with the image file.

**f. Embedded Files**

All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved.

**g. Image-Only Files**

All image-only files (non-searchable .pdfs, multi-page .tiffs, Snipping Tool and other screenshots, etc., as well as all other images that contain text) shall be produced with associated OCR text and metadata/database fields identified in section 3 for "Other ESI."

h. **Encrypted Files**

Any data (whether individual files or digital containers) that is protected by a password, encryption key, digital rights management, or other encryption scheme, shall be decrypted prior to processing for production.

   i. The unencrypted text shall be extracted and provided per section 2.c. The unencrypted files shall be used to render images and provided per sections 2.a and 2.b.  The unencrypted native file shall be produced pursuant to sections 10-20.
   ii. If such protected data is encountered but unable to be processed, each file or container shall be reported as an exception in the accompanying Exception Report (pursuant to section 26) and shall include all available metadata associated with the data, including custodian information.

i. **Production of Imaged Hard Copy Records**

All imaged hard copy material shall reflect accurate document unitization including all attachments and container information (to be reflected in the PARENTID, ATTACHID, BEGATTACH, ENDATTACH and FOLDERID).

   i. Unitization in this context refers to identifying and marking the boundaries of documents within the collection, where a document is defined as the smallest physical fastened unit within a bundle. (e.g., staples, paperclips, rubber bands, folders, or tabs in a binder).
   ii. The first document in the collection represents the parent document and all other documents will represent the children.
   iii. All documents shall be produced in black and white TIFF format unless the image requires color.  An image requires color when color in the document adds emphasis to information in the document or is itself information that would not be readily apparent on the face of a black and white image.  Images identified as requiring color shall be produced as color 300 dpi single-page JPEG files.
   iv. All objective coding (e.g., document date or document author) should be discussed and produced to the government as additional metadata/database fields.\

j. **Production of Spreadsheets and Presentation Files**

All spreadsheet and presentation files (e.g. Excel, PowerPoint) shall be produced in the unprocessed "as kept in the ordinary course of business" state (i.e., in native format), with an associated placeholder image.  *See* section 18 below.  The file produced should maintain the integrity of all source, custodian, application, embedded and related file system metadata.  No alteration shall be made to file names or extensions for responsive native electronic files.

k. **Production of E-mail Repositories**

E-mail repositories, also known as e-mail databases (e.g., Outlook PST, Lotus NSF, etc.), can contain a variety of items, including: messages, calendars, contacts, tasks, etc.  For purposes of production, responsive items shall include the "E-mail" metadata/database fields outlined in section 3, including but not limited to all parent items (mail, calendar, contacts, tasks, notes, etc.) and child files (attachments of files to e-mail or other items) with the parent/child relationship preserved. Our preferred format for e-mail productions is PST.  E-mail should NOT be provided in X400 or X500 format.  E-mail databases from systems other than Microsoft Exchange shall be

produced after consultation with and written consent of the government about the format for the production of such databases.

**l.   Production of Items Originally Generated in E-mail Repositories but Found and Collected Outside of E-mail Repositories, i.e., "Stand-alone" Items**

Any parent e-mail or other parent items (e.g., calendar, contacts, tasks, notes, etc.) found and collected outside of e-mail repositories (e.g., items having extensions .msg, .htm, .mht, etc.), shall be produced with the "Loose E-mail" metadata fields outlined in section 3, including but not limited to any attachments, maintaining the family (parent/child) relationship.

**m.   Production of Instant Messenger (IM), Voicemail Data, Audio Data, Video Data, etc.**

The responding party shall identify, collect, and produce any and all data which is responsive to the requests which may be stored in audio or video recordings, cell phone/PDA/Blackberry/smart phone data, tablet data, voicemail messaging data, instant messaging, text messaging, conference call data, video/audio conferencing (e.g., GoTo Meeting, WebEx), and related/similar technologies. However, such data, logs, metadata or other files related thereto, as well as other less common but similar data types, shall be produced after consultation with and written consent of the government about the format for the production of such data.

**n.   Production of Social Media**

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, Google+, LinkedIn, etc.) the producing party shall first discuss with the government the potential export formats before collecting the information.

**o.   Production of Structured Data**

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, etc.), the producing party shall first identify the database type and version number, provide the database dictionary and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database. The list of reports shall be provided in native Excel (.xls or .xlsx) format.

**p.   Production of Structured Data from Proprietary Applications**

Prior to any production of structured data from proprietary applications (e.g., proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint etc.) the producing party shall first provide the database dictionary and a list of all reports that can be generated from the structured database.  The list of reports shall be produced in native Excel (.xls or .xlsx) format.

**q.   Production of Photographs with Native File or Digitized ESI**

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created.  All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

**r.  Production of Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images.  The report shall include the DOCID or Bates number(s) corresponding to each such image.

**s.  Production of ESI from Non-PC or Non-Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

**t.  Production of Native Files (When Applicable Pursuant to These Specifications)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3.

ESI shall be produced in a manner which is functionally usable by the government.  The following are examples:

   i.  AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.
   ii.  GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.
   iii.  Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

**u.  Bates Number Convention**

All images should be assigned Bates numbers before production to the government.  The numbers should be endorsed on the actual images.  Native files should be assigned a single Bates number for the entire file. The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion.  The Bates number shall be a unique number given to each page (when assigned to an image) or to each document (when assigned to a native file).  If the government agrees to a rolling production, the numbering convention shall remain consistent throughout the entire production.  There shall be no spaces between the prefix and numeric value.  If suffixes are required, please use "dot notation."  Below is a sample of dot notation:

|   |   |
|---|---|
| PREFIX0000001 | PREFIX0000003 |
| PREFIX0000001.001 | PREFIX0000003.001 |
| PREFIX0000001.002 | PREFIX0000003.002 |

v. **Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

  i. CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.
  ii. External hard drives (USB 3.0 or higher, Firewire or eSATA, formatted to NTFS format specifications) or flash drives.
  iii. Storage media used to deliver ESI shall be appropriate to the size of the data in the production.
  iv. Media should be labeled with the case name, production date, Bates range, and producing party.

w. **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords and specific decryption instructions. No encryption software shall be used without the written consent of the government.

x. **Compliance and Adherence to Generally Accepted Technical Standards**

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

y. **Read Me Text File**

All deliverables shall include a "read me" text file at the root directory containing: total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats. The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

z. **Exception Report**

An exception report, in .csv format, shall be included, documenting any production anomalies utilizing the electronic Bates number (DOCID or control numbering) assigned during the collection, processing, and production phases.

aa. **Transmittal Letter to Accompany Deliverables**

All deliverables should be accompanied by a transmittal letter including the production date, CID number, producing party name, and Bates number range produced.

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| TXT-ROWNUMBER | Row number. | ✓ | # | # | # | # | # | # | # | # | # |
| TXT-CHATNUMBER | Chat number, identifies chat groups. | ✓ | Chat # | | | | | | | | |
| TXT-STARTTIME | Start date-time for conversation, calendar item. | ✓ | Start Time: Date | | | | | | | | Start Date: Date |
| TXT-ENDTIME | End date-time for calendar item. | ✓ | | | | | | | | | End Date: Date |
| TXT-LASTACTIVITYTIME | End date-time for conversation. | ✓ | Last Activity: Date | | | | | | | | |
| TXT-PARTICIPANTS | Who was involved in the conversation, meeting. | ✓ | Participants | | Party | | | | | | Attendees |
| TXT-MESSAGENUMBER | Individual identifier for message. | ✓ | Instant Message # | | | | | | | | |
| TXT-BODY | Body of the chat, message, item. | ✓ | Body | Body | Message | | | | | Body | |
| TXT-STATUS | Whether the text was Sent | ✓ | Status | Status | Status | | | | | | Status |

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| | or Read on the device. | | | | | | | | | | |
| TXT-LOCATION | GPS Information. | ✓ | Location | | | | Location | | | | Location |
| TXT-TIMESTAMP | Timestamp of item. Equivalent to DateReceived for incoming items or to DateSent for outgoing items. | ✓ | Timestamp: Date | Date | Date | Date | | Timestamp-Date | Timestamp-Date | | |
| TXT-READDATE | Date read | ✓ | Read: Date | | Read-Date | | Read-Date | | | | |
| TXT-DELETED | Indicates whether a message was deleted and recovered by Cellebrite. | ✓ | Deleted - Chat | Deleted | | Deleted | Deleted | Deleted | Deleted | Deleted | Deleted |
| TXT-STARREDMESSAGE | Notes whether the message was flagged. | ✓ | Starred message | | | | Starred message | | | | |
| TXT-THREAD-GROUP | Populate with the DOCID of the first text in the chat conversation to allow the | ✓ | Chat # | | | | | | | | |

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| | entire chat conversation to be grouped as a family. (Sort each device by Chat Number and then by Row Number to assign TXT-THREAD-GROUP identifier). This is NOT the BEGATTACH field or Relativity Group Identifier. | | | | | | | | | | |
| TXT-SMSC | Short Message Service Center (handles SMS text messages on behalf of phone service provider) | ✓ | | | SMSC | | | | | | |
| DIRECTION | Direction of communication; Outgoing or Incoming. | ✓ | | Direction | Direction | Direction | Direction | | | | |

| Field Name | Field Description | Mobile | Mobile Cellebrite Categories | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | Chats | MMS | SMS | Email | Instant Message | Voicemail | Recordings | Notes | Calendar |
| IMPORTANCE | | ✓ | | Priority | | Priority | | | | | Priority |
| ACCOUNT | Account identifier for device user: email address, phone number, account number. | ✓ | | Name | | Account | | Name | | | |
| DURATION | Duration time of call, voice message, audio, video in HH:MM:SS format, e.g. 00:00:32 | ✓ | | | | | | Duration | Duration | | |

a) **Production of Social Media**

Prior to any production of responsive data from social media (e.g., Twitter, Facebook, LinkedIn, etc.), the producing party shall first discuss with the government the potential export formats before collecting the information, to ensure it is collected and produced in a way that preserves the original metadata, has a clear chain of custody, and provides as much information as possible regarding the source and history of each individual communication.

Social media platforms offer different functions, forms of content, and capability for downloading accounts.  Because of these differences, prior to collection of social media data, the producing party must discuss with the government the available export and production methods and formats that the producing party is considering.  Unless the government agrees to an alternative in writing, regardless of the social media platform, productions of social media content must meet the following general requirements:  (1) separate (2) searchable (3) static images of (4) each responsive posting on the social media platform, (5) all related content (e.g., comments, likes, share or re-transmittal information, images, videos, linked documents and content), and (6) associated metadata (e.g., user name(s), date, and time of all posts, comments, likes, share or re-transmittals).

These general requirements are in addition to any more specific requirements in a particular request (e.g., geolocation data), and the producing party must ask the government about any perceived conflict between these requirements and another source of specifications or requirements.  If available from the social media platform or through social media data processing software, files that facilitate interactive review of the data (i.e., html files) as well as load files in .csv format must be produced with the associated content.

b) **Production of Structured Data**

Prior to any production of responsive data from a structured database (e.g., Oracle, SAP, SQL, MySQL, QuickBooks, proprietary timekeeping, accounting, sales rep call notes, CRMs, SharePoint, etc.), the producing party shall first identify the database type and version number, discuss providing the database dictionary (in whole or part) and any user manuals, or any other documentation describing the structure and/or content of the database and a list of all reports that can be generated from the database.  Upon consultation with and written consent of the government, if a report is provided, the standard format of that report provided should be in comma separated values (.csv) format.  The information contained in any such report must be thoroughly explained to the government before production.

c) **Production of Photographs with Native File or Digitized ESI**

Photographs shall be produced as single-page JPEG files with a resolution equivalent to the original image as they were captured/created.  All JPEG files shall have extracted metadata/database fields provided in a Concordance® load file format as outlined in section 3 for "Other ESI."

d) **Production of Images from which Text Cannot be OCR Converted**

An exception report shall be provided when limitations of paper digitization software/hardware or attribute conversion do not allow for OCR text conversion of certain images. The report shall include the DOCID or Bates number(s) corresponding to each such image.

e) **Production of Translated Text with Non-English Language ESI or Documents**

To the extent translated text is available to the producing party through machine language translation, such translations shall be provided to the government with the production. The producing party shall provide the original extracted text as well as the translated extracted text in load ready format. The translated text and images of translated documents shall be provided as a separate folder volume to the main production. The parties shall meet and confer regarding any required translated text redactions.

f) **Production of Audio File Transcripts**

To the extent audio files are produced and transcripts are available to the producing party through machine transcription, such transcripts shall be provided to the government with the production. The producing party shall provide the audio file transcript as a text file in load ready format like any other text file named by the BEGDOC#. The parties shall meet and confer regarding any required audio file redactions.

g) **Production of ESI from Non-PC or Non-Windows-based Systems**

If responsive ESI is in non-PC or non-Windows-based Systems (e.g., Apple, IBM mainframes, and UNIX machines, Android device, etc.), the ESI shall be produced after discussion with and written consent of the government about the format for the production of such data.

h) **Production of Native Files (When Applicable Pursuant to These Specifications)**

Production of native files, as called for in these specifications, shall have extracted metadata/database fields provided in a Concordance® load file format as defined in the field specifications for "Other ESI" as outlined in section 3 as well as a placeholder image which indicates a native file is being produced.

ESI shall be produced in a manner which is functionally usable by the government. The following are examples:

   i.   AutoCAD data, e.g., DWG and DXF files, shall be processed/converted and produced as single-page JPG image files and accompanied by a Concordance® Image formatted load file as described above. The native files shall be placed in a separate folder on the production media and linked by a hyperlink within the text load file.

   ▪   GIS data shall be produced in its native format and be accompanied by a viewer such that the mapping or other data can be reviewed in a manner that does not detract from its ability to be reasonably understood.

    ii.    Audio and video recordings shall be produced in native format and be accompanied by a viewer if such recordings do not play in a generic application (e.g., Windows Media Player).

i) **Bates Number Convention**

All images should be assigned Bates numbers before production to the government. Each Bates number shall be a standard length, include leading zeros in the number, and be unique for each produced page. The numbers should be endorsed on the actual images at a location that does not obliterate, conceal, or interfere with any information from the source document. Native files should be assigned a single Bates number for the entire file which will represent the native document in the Opticon/ Concordance® Image Cross Reference file. The load file will include a reference to the native file path and utilize the NATIVELINK metadata field). The Bates number shall not exceed 30 characters in length and shall include leading zeros in the numeric portion. The Bates number shall be a unique number given sequentially (i.e. page one of document is PREFIX0000000001, page two of the same document is PREFIX0000000002) to each page (when assigned to an image) or to each document (when assigned to a native file). If the parties agree to a rolling production, the numbering convention shall remain consistent throughout the entire production. There shall be no spaces between the prefix and numeric value. If suffixes are required, please use "dot notation." Below is a sample of dot notation:

|  | *Document #1* | *Document #2* |
|---|---|---|
| *Page #1* | PREFIX00000000001 | PREFIX00000000002 |
| *Page #2* | PREFIX00000000001.002 | PREFIX00000000002.002 |
| *Page #3* | PREFIX00000000001.003 | PREFIX00000000002.003 |

j) **Media Formats for Storage and Delivery of Production Data**

Electronic documents and data shall be delivered on any of the following media:

    i.    CD-ROMs and/or DVD-R (+/-) formatted to ISO/IEC 13346 and Universal Disk Format 1.02 specifications; Blu-ray.

    ▪    External hard drives (USB 3.0 or higher, formatted to NTFS format specifications) or flash drives

    ii.    Government approved File Transfer Protocol (FTP) technologies.

    ▪    Storage media used to deliver ESI shall be appropriate to the size of the data in the production.

    iii.    Media should be labeled with the case name, production date, Bates range, and producing party.

k) **Virus Protection and Security for Delivery of Production Data**

Production data shall be free of computer viruses. Any files found to include a virus shall be quarantined by the producing party and noted in a log to be provided to the government. Password protected or encrypted files or media shall be provided with corresponding passwords

and specific decryption instructions.  All encryption software shall be used with approval by and with the written consent of the government.

### l) Compliance and Adherence to Generally Accepted Technical Standards

Production shall be in conformance with standards and practices established by the National Institute of Standards and Technology ("NIST" at www.nist.gov), U.S. National Archives & Records Administration ("NARA" at www.archives.gov), American Records Management Association ("ARMA International" at www.arma.org), American National Standards Institute ("ANSI" at www.ansi.org), International Organization for Standardization ("ISO" at www.iso.org), and/or other U.S. Government or professional organizations.

### m) Read Me Text File

All deliverables shall include a "read me" text file at the root directory containing:  total number of records, total number of images/pages or files, mapping of fields to plainly identify field names, types, lengths, and formats.  The file shall also indicate the field name to which images will be linked for viewing, date and time format, and confirmation that the number of files in load files matches the number of files produced.

### n) Exception Report

An exception report, in .csv format, shall be included, documenting any production anomalies during the collection, processing, and production phases. The report shall provide all available BEGDOC# or DOCID values and metadata listed in section 3, including but not limited to file names and file paths for all affected files.

### o) Transmittal Letter to Accompany Deliverables

All deliverables should be accompanied by a transmittal letter including the production date, case name and number, producing party name, and Bates range produced.  Technical instructions on how to decrypt media should be included in the transmittal letter but the password should be transmitted separately.